181630.3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GEORGE DILACIO, JR.,

                            **Plaintiff,**

                  -against-

**NEW YORK CITY DISTRICT COUNCIL OF
THE UNITED BROTHERHOOD OF
CARPENTERS & JOINERS OF AMERICA,
and MICHAEL J. FORDE, personally and
WILLIAM P. CALLAHAN, personally**

                            **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**08-CIV-6959 C.S.H.
ECF CASE**

<u>**AMENDED COMPLAINT**</u>

      Plaintiff, George Dilacio, Jr., by his attorneys, The Sarcone Law Firm, PLLC, as and for his Amended Complaint against the defendants, alleges as follows:

<u>**Parties, Jurisdiction and Venue**</u>

    1. Plaintiff is a resident of the State of New York, County of Westchester. For virtually his entire adult life, plaintiff has been employed in the construction industry in the New York City area.

    2. Defendant New York City District Council of the United Brotherhood of Carpenters & Joiners of America (the "District Council") is an unincorporated association representing approximately 25,000 carpenters in the New York City area. Plaintiff has been a member in good standing of Local 157 on of several locals which make up the District Council for the past 41 years (the "Union"), and has held a number of leadership positions in the Union and since 1991 as Business Representative to the  District Council.

3. Since approximately 1994, the District Council has been subject to a federal court Consent Decree that was the result of an investigation by the Federal Bureau of Investigations (FBI) to expose and route out widespread corruption and the influence of organized crime in the Union. As part of the Consent Decree, an independent investigator was appointed by the Court (Honorable Charles S. Haight, Jr.) to oversee and review the operations of the constituent Unions, including the District Council. In an order dated August 8, 2008, the Court recently extended the Court's supervision of the parent Union.

4. From approximately 1967 through November 2007, plaintiff was a highly respected member of the Union and since 1991 its Business Representative to the District Council. At all relevant times, plaintiff performed his duties in a competent and faithful manner, and was known throughout the District Council's membership as an honest and hardworking Business Representative who at all times pursued the best interests of the membership.

5. Defendant Michael J. Forde ("Forde") is the Executive Secretary/Treasurer of the District Council.

6. Defendant William P. Callahan, Esq. ("Callahan") through his company, Unitel Intelligence Group, Inc., is, and has been since 2005 the Independent Investigator of the District Council. In an order dated August 11, 2008, Judge Haight recently reappointed Callahan and his company to an additional term as independent investigator. Upon both appointments, Callahan appointments were vehemently opposed by the United States Attorney for the Southern District of New York and the Attorney General of the United States of America (USA SDNY), but was favored by the District Council and Forde.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §412, in that the plaintiff asserts a cause of action under 29 U.S.C. §412 for the

violation of his rights under the Labor Management Disclosure and Reporting Act, 29 U.S.C. §411. This Court has supplementary subject matter jurisdiction over the state law claims asserted by the plaintiff under 28 U.S.C. §1367.

8. Venue is proper in this Judicial District under 28 U.S.C. §1391(b) in that the defendants reside in this District and a substantial part of the events giving rise to the claim occurred in this District.

**Factual Background**

9. Defendant Forde has been the Executive Secretary-Treasurer for the District Council since approximately 1998. For the past several years, plaintiff has been a vocal and well-known advocate for his running for Vice President of the District Council for at least two election cycles but was asked by Forde not to run against an incumbent but to wait until that incumbent retired which was always represented to plaintiff as soon.

10. In or about 2007, defendant Forde, with the knowing assistance of Callahan and upon information and belief, the consent and knowledge of the President and Vice President of the District Council that make up the governing executive body of that organization, conceived and began to implement a scheme designed to consolidate his power in the District Council and eliminate and suppress any actual or potential dissent or opposition or threats to his tenure and his continued exercise of such power.

11. Plaintiff, as a long-standing and well-respected leader in the Union and District Council, was perceived by defendant Forde as a serious threat to his power and a potential rival to his reelection as Executive Secretary/Treasurer of the District Council or for the position of Vice President or President which would have also presented a threat to his power and control. Indeed,

3

it was common knowledge in the District Council that plaintiff was considering a run for Executive Secretary/Treasurer or other District Council office in the next scheduled election.

**Forde's Scheme to Entrench Himself and Eliminate Potential Rivals**

12. Pursuant to Forde's scheme to entrench himself and eliminate potential rivals, and to suppress dissent and silence opposition, and with the knowing assistance of the independent investigator, Callahan, in or about November 2007, Forde directed a purge of the incumbent Business Representatives of the District Council.

13. The pretext for the purge was that the investigation allegedly conducted by Callahan revealed the alleged failure of the Business Representatives to perform their duties properly. Two of the three Business Representatives knuckled under Forde's threats and, at his insistence, "voluntarily resigned" their positions; a third was suspended from the position for 60 days but nonetheless discredited and could not credibly run for any executive position, plaintiff, however, knowing that he had done nothing wrong, refused.

14. Accordingly, on November 21, 2007, defendants delivered to plaintiff a purported termination letter ("Termination Letter"). The Termination Letter, which was signed by Forde in his capacity as Executive Secretary/Treasurer of the District Council, recited that plaintiff was being terminated as a Business Representative based upon his alleged "severe dereliction of duty" (which "severe dereliction of duty" was not specified). A copy of the Termination Letter is annexed hereto as Exhibit A and is incorporated by reference herein.

15. Upon information and belief, the only specific charges ever made against plaintiff relate to a purported "analysis" by the District Council's Independent Investigator, Callahan, of cell phone records of plaintiff, which, it is claimed, demonstrated that plaintiff was not present

"within the jurisdiction of District Council 157 or anywhere in Manhattan" – and therefore necessarily not performing "Union business" – on approximately 29 separate days.

16. Significantly, plaintiff was not given no prior notice of Callahan's investigation and conclusions and no opportunity whatsoever to contest or rebut these charges prior to his termination; nor was he given a copy of Callahan's Report or phone records although he duly demanded to see them.

17. Had plaintiff been given such an opportunity, he could have demonstrated (i) the logical flaw in the "Callahan analysis" (that it is necessary to be physically present in New York City to perform "Union business") especially since there has not been up to the date plaintiff was confronted with the allegations, any written or even oral instructions or rules or regulations informing a Business Representative that all of their work must take place within Manhattan and in fact there was an ongoing past practice that a Business Representative could be working anywhere and conducting the job they were appointed to i.e.: conventions out of state or country etc..; and (ii) that on *every one* of the days that he was charged with "betraying the trust showed him by the District Council as a Business Representative", he was, upon information and belief, in fact conducting Union business.

18. In simple English, plaintiff was "railroaded" by both Forde and Callahan. Upon information and belief, Callahan had a personal interest in conducting a "sham" investigation which would purport to uncover alleged wrongdoing by plaintiff and the other Business Representatives in order to demonstrate to the government that he should not be replaced as the Investigator and to solidify being supported by the District Council for his re appointment given his knowledge that the USA SDNY was opposed to him and also realizing that Judge Haight

would likely replace him if both the District Council and the USA SDNY opposed his re appointment.

19. Nevertheless, on December 5, 2007, defendants transmitted a so-called "Status Report" to the entire District Council membership, repeating the false assertion that the investigation had uncovered wrongdoing on the part of plaintiff (and the other Business Representatives); that such wrongdoing was the reason for plaintiff's termination; and that defendants had "interviewed these Representatives to get their side of the story." This latter comment was inserted to provide a veneer of respectability and "fairness" to a process which had neither. A copy of the Status Report is annexed hereto as Exhibit B and is incorporated by reference herein. The reference to the "discharged" Business Representative was to plaintiff and was understood as such by all members who received the Status Report.

20. Callahan knew that the results of his purported "investigation" would be disseminated in the Status Report and used as a basis for the Termination Letter.

21. In a further effort to eliminate plaintiff as a rival, in or about July 2008, and following the delivery of a letter from plaintiff's attorney to defendants alleging the claims asserted in this action, the District Council initiated an internal union proceeding against plaintiff seeking his expulsion from membership in the Union. Upon information and belief, the "trial" on these "charges" is currently scheduled for August 25, 2008 at 4:00pm. Even though plaintiff had informed the District Council that he had a previously scheduled surgery immediately upon receipt of written notification a week and a half ago, the District Council has refused to adjourn this "trial."

**AS AND FOR A FIRST CAUSE OF ACTION**

**(Violation of Plaintiff's Rights Under 29 U.S.C. §411)**

22. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23. Under the election rules which govern the District Council, nominations for office must be filed in October 2008 for the election to be held in December 2008.

24. Under the By-Laws of the District Council, only members of the District Council are eligible to run for office, including the office of Executive Secretary-Treasurer. In addition, Section 9B of the By-Laws provides that "Candidates for all such offices must be working within the bargaining unit represented by their District Council Union, or employed full time within the framework of the United Brotherhood of Carpenters to be eligible."

25. As a result of a pre-existing medical condition, plaintiff is unable to work as a carpenter. Thus, plaintiff's eligibility to run for and obtain elective office in the District Council depends upon: (i) his status as a "member" of the District Council; *and* (ii) his "full time employment" as a Business Representative of the District Council.

26. At all relevant times, defendants were fully aware of (i) plaintiff's medical condition; and (ii) the provisions of the By-Laws with respect to eligibility to run for and executive officer position for District Council.

27. Upon information and belief, both the termination of plaintiff as Business Representative and the attempt to expel him from membership in the District Council is part of an overall scheme by defendants (i) to suppress opposition to and dissent from membership of the District Council to the actions of the incumbent leadership of the District Council, including Forde; and (ii) to prevent opposition to such incumbent leadership (specifically, plaintiff) from challenging them in the next election, which is currently scheduled for December 2008. Indeed, the termination of plaintiff by Forde was in direct retaliation for plaintiff's stated and vocal interest

7

to run against Forde or possibly Vice President or President which would pose a threat to his leadership and in order to thwart plaintiff's potential bid for the office of Executive Secretary-Treasurer or other office in the next District Council election and also his questioning of his leadership, and with Callahan's assistance sought to discredit and eliminate him.

28. Upon information and belief, the "purge" of the Business Representatives by Forde in November 2007 had the desired and intended effect of chilling and suppressing any dissent to Forde from members of the District Council.

29. As an attempt to administer a final *"coup de grace"* to plaintiff's attempt to run for District Council office, in or about March 17, 2007 after plaintiff's attorneys notified Forde and the others of their unlawful behavior in terminating plaintiff as a Business Representative, plaintiff was notified of "charges" that serve as a pretext for his expulsion from membership in the Union. Obviously, to the extent plaintiff is not a member of the Union in good standing, he cannot run for office.

30. Callahan has knowingly lent his assistance to this scheme through his purported "investigation" of plaintiff.

31. Upon information and belief, defendants intend to rely upon the termination of plaintiff as Business Representative (and, possibly, his expulsion from membership in the Union) as a justification for denying plaintiff eligibility to be a candidate for Executive Secretary-Treasurer or any other position. Were this to occur, plaintiff (as well as the membership of the District Council) will be denied their rights as members of the District Council to participate freely in union affairs without fear of retaliation.

32. Moreover, defendants' scheduling of a trial for the purpose of expelling plaintiff from membership in the District Council, and their refusal to grant plaintiff a reasonable adjournment

of the trial notwithstanding his previously scheduled surgery, has deprived plaintiff of his rights against improper and unfair disciplinary action under 29 U.S.C. §411(a)(5).

33. As a result of plaintiff's termination as Business Representative and the intended denial of plaintiff's right to run for elective office of the District Council, plaintiff has suffered and will suffer irreparable injury, including his rights of free speech guaranteed by the United States and New York State Constitutions and labor laws.

34. Plaintiff has no adequate remedy at law.

35. Alternatively, plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

**(Wrongful Termination of Plaintiff's Employment)**

36. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37. Under applicable law, and even though plaintiff was an "at will" employee, the District Council may not terminate plaintiff's employment as a Business Representative for reasons which violate substantive law. Among other things, the employment relationship between plaintiff and the District Council was subject to the condition that the District Council would comply with its obligations under the federal Labor Laws and that plaintiff would not be terminated for the lawful exercise and intended exercise of his rights as a member of the Union, including his right to dissent and to run for office.

38. In concocting false allegations of wrongdoing against plaintiff for the purpose of punishing and retaliating against him for the exercise of his federally protected rights under Section 411 in order to prevent plaintiff from becoming a candidate for District Council office –

and thereafter using these false allegations as a pretext for firing plaintiff – defendants breached this condition.

39. As a result, plaintiff has suffered damages in an amount to be determined at trial.

40. The abuse by defendant Forde of his authority as Executive Secretary/Treasurer of the Union for his personal gain is so severe as to warrant the imposition of punitive damages.\

## AS AND FOR A THIRD CAUSE OF ACTION

### (Defamation)

41. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. The statements contained in the Termination Letter and the Status Report that plaintiff had engaged in wrongdoing and dereliction of duty, and that he was terminated as Business Representative based on such wrongdoing and dereliction of duty, were false and defamatory *per se.* The recipients of the Status Report knew and understood the reference to the Business Representative who was "discharged" following the so-called "investigation" as a reference to plaintiff.

43. Defendants Forde, Callahan and upon information and belief the President and Vice President of the District Council had actual knowledge that these statements were false and issued the Termination Letter and the Status Report with the malicious intent to discredit plaintiff, who was perceived as a rival to Forde's continued exercise of power.

44. Both the Termination Letter and the Status Report were widely disseminated among the membership of the District Council, and have resulted in severe damage and injury to plaintiff's reputation among his fellow District Council members, as well as the community in general and has embarrassed him and his family including his son who is a member of the Union and

daughter who is the owner of a minority owned company who's efforts to obtain work as carpenters within the territory of the District Council has been met with shenanigans.

45. As a result, plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands judgment:

a) On his First Cause of Action, a judicial declaration that plaintiff's termination as Business Representative was unlawful under Section 411; that plaintiff is eligible to be a candidate for the office of Executive Secretary-Treasurer of the District Council for the December 2008 election; that any "trial" challenging plaintiff's membership in the District Council is invalid and violates plaintiff's rights to a fair disciplinary process; together with an Order directing plaintiff's reinstatement as Business Representative of the District Council and compensatory damages and an award of attorneys fees;

b) On his Second Cause of Action, compensatory and punitive damages in the amount to be determined at trial.

c) On his Third Cause of Action, compensatory and punitive damages in the amount to be determined at trial.

d) For such other and further relief as to the Court may seem just and proper.\

Dated: New York, New York
August 24, 2008

**THE SARCONE LAW FIRM, PLLC**

By: _____
John A. Sarcone, III

Attorneys for Plaintiff
222 Bloomingdale Road, Suite 301
White Plains, New York 10605
(914) 686-8200

**EXHIBIT A**

# UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA
## NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS

MICHAEL J. FORDE
Executive Secretary Treasurer

PETER THOMASSEN
President

DENIS SHEIL III
Vice President



INSTITUTED AUGUST 12TH, 1881

395 HUDSON STREET
NEW YORK, N.Y. 10014
PHONE: (212) 366-7500
FAX: (212) 675-3118

Overnight Mail

November 21, 2007

Mr. George Dilacio, Jr.
40 Northview Drive
Mahopac, NY 10451

Dear George:

    In accordance with our discussions this week concerning, among other things, your severe dereliction of duty, please be advised that your employment as a District Council Business Representative is terminated, effectively the date of this letter. Please return your telephone and automobile to Local Union 157 immediately.

Fraternally,

Mike Forde, EST

# UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA

### NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS

MICHAEL J. FORDE
Executive Secretary Treasurer

PETER THOMASSEN
President

DENIS SHEIL III
Vice President



INSTITUTED AUGUST 12TH, 1881

395 HUDSON STREET
NEW YORK, N.Y. 10014
PHONE: (212) 366-7500
FAX: (212) 675-3118

## Status Report to Members of Local 157
## Regarding UBC Supervision

December 5, 2007

Dear Brothers and Sisters of Local 157:

Most of you have probably heard or seen by now, that on November 26, 2007, UBC General President Douglas McCarron, at the request of the executive officers of the District Council, placed your Local Union under International supervision. I am writing to give you some background information about how and why this action was taken and what is in store for Local 157 in the weeks and months ahead. Mostly, I want to assure you that the goal of all of the actions taken until now, while they may seem drastic to some, are intended to maintain and restore stability and self-rule for Local 157.

I will begin by giving you some background about what has led up to the decision to place the Local under supervision.

Over the last several weeks, the officers of the District Council were presented credible information, showing that some business representatives assigned to work in Local 157 were not performing their jobs in the manner expected of them by the District Council and that they had, in other respects, acted inconsistently with the standards expected of District Council employees. In response to this information, we interviewed those representatives to get their side of the story.

After considering the matter, the Local 157 Business Manager and one Business Representative resigned their employment by the District Council and from all Local 157 and District Council elected positions. Another Business Representative has been suspended and reassigned to work in another area. Yet another Business Representative was discharged.

As a result of these actions, as well as the recent guilty plea in the federal district court of another Local 157 executive board member and delegate to the District Council, your Local Union was faced with a significant vacuum of leadership in its top levels of Union governance. Local 157 was about to become a ship without a rudder or a direction.

**Why we asked for the supervision to be imposed.**

To stabilize the governance of the Local and restore the service the Local 157 membership and all District Council carpenters working in your Local's jurisdiction deserve, the District Council requested General President Douglas McCarron to order an

emergency supervision over the Local. The District Council would have handled the matter here in New York City as an "in-house" matter if it could, but under our constitution, only General President McCarron has the authority to order such measures to protect the welfare of the Local and its members.

By letter dated November 21, 2007, General President McCarron, acting on our request, ordered a supervision be imposed on Local 157. General President McCarron appointed the UBC's Eastern District Vice President Frank Spencer to assume supervision of the Local. Vice President Spencer has appointed me as his first assistant supervisor, to oversee the orderly restoration of internal self governance and the responsible management and conduct of the Local's and the District Council's business in Local 157.

It is the Council's hope and intention, throughout this period of supervision, to have Local 157 members continue to serve your needs both inside your Local Union hall, with respect to the collection of dues and other internal Union business functions, as well as on the job sites located on the east side of Manhattan and elsewhere in Local 157's jurisdiction.

Toward these ends, we have already assigned Brother Lawrence D'Errico to serve as the interim business manager, and Brothers Anthony Pugliese and "Rambo" Ibric have been assigned as business representatives to police our contracts and service our job sites in Local 157's jurisdiction. These individuals are experienced carpenters and field representatives who are uniquely qualified to service all of your job site issues, and we trust and expect that you will be noticing an increased presence of business representatives on your job sites. All shop stewards, journeymen and apprentices should recognize them and feel free to greet them when you see them on your job. Shop stewards should continue to bring their completed weekly reports to the Local 157 hall every week.

In the meantime, there are normal procedures applied by the UBC in cases of supervision, to stabilize the situation and enable the supervisors to fully evaluate the Local's state of affairs. All officers of the executive board and the Local's delegates to the District Council, as well as membership meetings have been suspended. We will continue to evaluate the needs of the Local and adjust the assignment of business representatives and organizers in Local 157's area as needed.

At all stages of this process, we will continue to communicate with you and keep you informed about what has happened and what is about to happen.

The officers of the District Council thank General President McCarron for his prompt response to their request for assistance in this matter, and are committed to working with the UBC and the members of Local 157, to ensure that the important tasks ahead of us are carried out with respect and honor for the rights and welfare of all our members.

Fraternally,

Michael J. Forde
Executive Secretary Treasurer

*Index No.* **08-CIV-6959**                    *Year 20*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**GEORGE DILACIO, JR.,**

Plaintiff,

-against-

**NEW YORK CITY DISTRICT COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, and MICHAEL J. FORDE personally and William P. Callahan personally,**

Defendants.

---

# AMENDED COMPLAINT

---

**THE SARCONE LAW FIRM, PLLC**
ATTORNEYS AND COUNSELORS AT LAW

*Attorney(s) for* the PLAINTIFF

*Office Address & Tel. No.:*

222 BLOOMINGDALE ROAD, SUITE 301
WHITE PLAINS, NY 10605-1511
V: 914-686-8200 / F: 914-686-8988

---

*Pursuant to 222 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*
*Dated:* ............................                    Signature:................................................

Print Signer's Name.......................................

---

*Service of a copy of the within*                                                *is hereby admitted.*
*Dated:*

........................................................
*Attorney(s) for*

---

*PLEASE TAKE NOTICE*

☐   That the within is a (certified) true copy of a
    entered in the office of the clerk of the within named Court on                                                20

☐   That an Order of which the within is a true copy will be presented for settlement to the
    Hon.                                                                                                    *One of the judges of the within named Court.*
At
On                                    20,    ,        at                                        M.
Dated:

**THE SARCONE LAW FIRM, PLLC**
ATTORNEYS AND COUNSELORS AT LAW