UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
GEORGE DILACIO, JR.,

                      Plaintiff,

       -against-

NEW YORK CITY DISTRICT COUNCIL OF
THE UNITED BROTHERHOOD OF
CARPENTERS & JOINERS OF AMERICA,
and MICHAEL J. FORDE, personally and
WILLIAM P. CALLAHAN, personally,

                      Defendants.
------------------------------------------------------------ x

08 Civ. 6959 (CSH)(THK)

MEMORANDUM OPINION
AND ORDER

HAIGHT, Senior District Judge:

       Plaintiff George Dilacio, Jr., a member of Local 157, a constituent local of Defendant New York District Council of the United Brotherhood of Carpenters & Joiners of America ("the District Council" or "the Union"), has brought this action against the District Council, Defendant Michael E. Forde, the District Council's Executive Secretary/Treasurer, and Defendant William P. Callahan, the president of Unitel Intelligence Group Inc. ("Unitel"), the Independent Investigator appointed by this Court under the circumstances described *infra*. Dilacio's Amended Complaint alleges that these Defendants violated his rights under section 101 of the Labor Management Disclosure and Reporting Act ("LMRDA"), 29 U.S.C. § 411.

       Dilacio now moves for a temporary restraining order and expedited discovery in aid of his further motion for a preliminary injunction. For the reasons that follow, Dilacio's motion for a temporary restraining order is denied. His request for expedited discovery will be addressed during the course of this Opinion.

I.  **BACKGROUND**

Familiarity is assumed with all decisions previously entered by this Court and the Second Circuit in the civil RICO action commenced by the government in 1990 under docket number 90 Civ. 5722, including the Consent Decree entered in that case in 1994, and the subsequent orders of this Court appointing Independent Investigators ("II"s), first Walter Mack and now Unitel, whose president is William P. Callahan. The Court has considered all the affidavits, exhibits, and briefs submitted by the parties on the present motion.

Plaintiff Dilacio is a member of Local 157 of the United Brotherhood of Carpenters & Joiners of America ("UBC"). Local 157 is one of the eleven constituent locals that comprise the District Council, one of several regional entities created by the UBC.

At the beginning of November, 2007, Dilacio was one of several Business Representatives employed by the District Council and assigned to Local 157. He had been a Business Representative since 1991. Dilacio was also the vice-president of Local 157, elected by its membership.

A local's Business Manager must ensure that every job where local members are working has a Business Representative assigned to it. The duties of a Business Representative include regular visits to all jobs assigned to him and the completion of daily activity reports which are submitted on a weekly basis to the Business Manager.

Since 2000, under the stimulus of the Consent Decree, the District Council instituted an anti-corruption program which included the formation of an Anti-Corruption Committee and the operation of a telephone hotline to receive calls containing allegations of wrongdoing, such as violations of the Job Referral Rules incorporated as part of the Consent Decree. The IIs appointed by this Court also maintained hotlines, worked together with the District Council's Anti-Corruption

Committee, conducted investigations, and reported its findings and recommendations to the District Council and to the Court.

In November 2003 Mack, then the II, discovered large-scale fraud by a contractor, Tri-Built Construction. At various job sites, including a project at Randall's Island within Local 157's jurisdiction, Tri-Built had over almost ten years hrihed shop stewards to keep workers off their shop steward sheets, pay carpenters off the books, and thereby defraud the Union benefit funds of employers' contributions called for hy the collective bargaining agreements. Mack's discoveries caused the District Council to hold a meeting in November 2003 of all business agents and business representatives to emphasize the nature and importance of their duties. The District Council issued a written summary of those duties, to which I referred *supra*. In January 2005 the District Council sent a memo to all local union business managers stating: "All Locals must continue to forward their Business Agents' weekly activity report and the business manager confirmation form to the District Council on a weekly basis."[1]

By Order dated August 18, 2005, Unitel headed by Callahan succeeded Mack as II. Shortly thereafter Unitel began investigating a contractor called L&D Installers ("L&D"). Unitel investigators interviewed Local 157 Business Representatives to obtain information about activities at union job sites involving L&D. It appeared that there was a lack of job site visits by several of the Local 157 Business Representatives, which several Representatives excused by saying they were too busy on other union business to conduct job site visits.[2] In addition, in September 2007 hotline

---

[1] Ex. B-5 to Declaration of Maurice Leary, District Council Director of Operations, verified September 19, 2008 ("Leary Decl.").

[2] Declaration of William P. Callahan, verified September 19, 2008, at ¶¶ 5-6 ("Callahan Decl."). Callahan's declaration uses the phrase "Business Agent," which is synonymous with

3

calls were received from carpenters "complaining that the Local 157 Business Manager and Business Representatives were not regularly coming to work and were leaving work early."[3] Unitel investigated the Local 157 Business Representatives' performance by requesting production of the activity reports required to be filed by Business Representatives and the Business Manager, and by obtaining from the District Council cellular telephone records and timesheets for the Business Representatives concerned. Callahan concluded in a report to the District Council dated November 13, 2007 that Local 157 "is in disarray due to a lack of leadership" from an absentee Business Manager," and the Business Representatives "come and go as they please following few if any rules."[4]

Callahan's November 13, 2007 report to the District Council identified three Local 157 members as having performed inadequately: William Hanley, the Business Manager, and two Business Representatives – Fred Kennedy and Plaintiff George Dilacio. The District Council's officers discussed the Local 157 situation on November 17, a Saturday, and spoke to the three individuals during the week following. Hanley and Kennedy agreed to resign their District Council employment and Local 157 elected positions. Their written settlement agreements recited that in consideration for Hanley's and Kennedy's resignations and their agreement not to run for union office in the future, "No internal union charges would be filed against them or other action taken relating to the reasons for their resignation."[5] Dilacio asserted that he had done nothing wrong and

---

"Business Representative."

[3] Leary Decl. at ¶ 9.

[4] Ex. A to Callahan Decl. at ¶ 8.

[5] Leary Decl. at ¶ 12.

4

refused to do resign. By letter dated November 21, 2007, Michael J. Forde, the Executive Secretary-Treasurer of the District Council and its highest ranking officer, advised Dilacio that his employment as a District Council Business Representative had been terminated.

Also on November 21, 2007, the District Council reported the status of the Local 157 situation to Douglas McCarron, the General President of the UBC. On that day McCarron issued an order placing Local 157 under UBC supervision. McCarron appointed as supervisor Frank Spencer, vice-president of the UBC Eastern District. In accordance with its procedures, the UBC conducted a hearing on December 18, 2007 to consider the appropriateness of McCarron's order imposing supervision on Local 157. Callahan submitted a written statement to the hearing committee. Dilacio testified before it. On January 21, 2008, the UBC General Executive Board adopted the report of the UBC hearing committee that supervision of Local 157 was warranted.

In District Council Charge Forms dated March 14, 2008, Leary filed charges against Dilacio for several violations of the UBC constitution arising out of the events surrounding Local 157. Section 52 of the UBC constitution sets forth procedures for the trial of such charges, including appeals and possible modification of penalties. Dilacio's trial before the District Council Trial Committee is presently scheduled to begin on October 9, 2008.

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

The District Council will hold elections for officers in mid-December 2008. Plaintiff Dilacio asserts that "[f]or the past several years, it has been well known to Forde and other members of the executive council and my Local that I wanted to run for Vice President of the District Council."[6] Dilacio's theory of the case is that "[i]n or about 2007, defendant Forde conceived and began to

---

[6] Dilacio Affidavit sworn to September 10, 2008 ("Dilacio Main Affid."), at ¶ 6

5

implement a scheme designed to consolidate his power in the District Council and eliminate and suppress any actual or potential dissent or opposition or threats to his tenure and his continued exercise of such power."[7] Dilacio says that "[a]s a long-standing and well-respected leader in the Union, I was perceived by Forde as a serious threat to his power and a potential rival to his reelection as Executive Secretary/Treasurer of the District Council or for another position which would also threaten his power and control."[8] and goes on to assert: "Pursuant to Forde's scheme to entrench himself and eliminate potential rivals, and to suppress dissent and silence opposition, in or about November 2007 Forde directed a purge of the incumbent Business Representatives of the District Council."[9] "The pretext for the purge was that the investigation" by Callahan as II "revealed the alleged failure of the Business Representatives to perform their duties properly."[10] Dilacio contends that Callahan knowingly assisted Forde in his 'purge'" because Callahan is "quite close to Forde and the other District Council leadership, and, I believe, had a personal interest in conducting a 'sham' investigation which would purport to uncover alleged wrongdoing by me and the other Business Representatives in order to demonstrate to the government that he should not be replaced as the Investigator."[11] Dilacio asserts further that the trial by the District Council Trial Committee of the

---

[7] *Id.* at ¶ 7.

[8] *Id.* at ¶ 8.

[9] *Id.* at ¶ 9.

[10] *Id.* at ¶ 10.

[11] *Id.* at ¶ 15. Invoking a provision of the Court's order appointing Unitel as the II, at the conclusion of 24 months of Unitel's services the government moved to remove Unitel and replace it with a different II. The District Council and Unitel opposed that motion. The Court reappointed Unitel in an Opinion and Order reported at 2008 WL 3275533 (S.D.N.Y. Aug. 11, 2008).

6

charges against him, scheduled to begin on October 9, 2008, is "before a 'tribunal' which is completely under the control of Forde and will produce a 'verdict' which is, of course, pre-ordained."[12]

The gravamen of Dilacio's Amended Complaint is that the District Council's disciplinary actions against him described in Part I were spurious, unfounded, and in furtherance of Forde's scheme, aided and abetted by Callahan. Dilacio's claims against the District Council, Forde and Callahan are based on section 101 of the LMRDA, 29 U.S.C. § 411, which protects union members' rights to free speech, freedom of assembly, and equal voting rights. "The principal reason for the enactment of the LMRDA was to correct widespread abuses of power and instances of corruption by union officials, and to encourage democratic self-government in unions." *Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41, 44 (2d Cir. 1989).

Dilacio moves by order to show cause for a preliminary injunction "(1) preventing defendants from taking any steps to terminate plaintiff's membership in Local 157, ... including the noticing or holding of any 'trial' by the Local seeking to expel plaintiff from membership in the Union and/or District Council; (2) preventing plaintiff from qualifying as a candidate for the office of Executive Secretary-Treasurer of the Local for the election to be held in December 2008; and (3) reinstating plaintiff as a Business Representative of the Local and annulling his purported termination in November 2007." Notice of Motion at 1-2. The reference in subparagraph (2) to "the Local" is undoubtedly an error. Dilacio's main brief at 1 makes it clear that he wishes an injunction against preventing him from qualifying "as a candidate for the office of Executive Secretary-Treasurer or another officer position *in the District Council.*"

---

[12] *Id.* at ¶ 17.

Dilacio's order to show cause also prays for a temporary restraining order ("TRO") pursuant to which "*the Local* and all those acting on its behalf are hereby temporarily restrained and prohibited from taking any steps to terminate plaintiff's membership in the Local or preventing plaintiff from qualifying as a candidate for office based on his purported termination as a Business Representative of the District Council or from holding the Trial." Notice of Motion at 2 (emphasis added). Again, a note of confusion appears to have crept in. Local 157 does not engage in any of the conduct sought to be temporarily restrained. I will assume that Dilacio's motion for a TRO is intended to be aimed at the District Council and Forde.

Dilacio also prays for expedited discovery in advance of an evidentiary hearing on his motion for a preliminary injunction.

## III. DISCUSSION

### A. Standard of Review

To obtain preliminary injunctive relief, either a temporary restraining order or a preliminary injunction, a party must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *1-800 Contracts, Inc. v. WhenU.Com., Inc.*, 414 F.3d 400, 406 (2d Cir. 2005) (citing cases).

With respect to the likelihood of success on the merits, the cases draw a distinction between preliminary injunctive orders which seek to preserve the status quo and those which alter the status quo or provide the movant with the relief sought in the underlying action in a manner that cannot be undone even if the nonmoving party prevails on the merits at trial. "An even more rigorous standard

8

– requiring a 'clear' or 'substantial' showing of likelihood of success - applies where (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at trial." *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 149-50 (2d Cir. 1999) (citation and internal quotation marks omitted). Dilacio's motion for a temporary restraining order must satisfy this more rigorous standard, since the status quo includes the District Council's scheduled trial of Dilacio on disciplinary charges and Dilacio seeks to bar that trial from taking place.

### B. The Prayed-For Temporary Restraining Order as to Defendant Callahan

Quite apart from the standards discussed in Part III.A., Dilacio is not entitled to this temporary restraining order against Defendant Callahan because neither Unitel, the Court-appointed II, nor Callahan as its president have any authority to take or undo the actions embraced by the requested TRO. Those actions relate solely to the internal Union relationships between Plaintiff Dilacio on the one hand and Defendants District Council and Forde on the other.

### C. The Prayed-For Temporary Restraining Order as to Defendants District Council and Forde

Assuming without deciding that if Dilacio's power-retaining conspiracy allegations against Forde are true Dilacio has satisfied the irreparable harm requirement, I consider whether Dilacio has met the enhanced standard of demonstrating a clear or substantial likelihood of success in proving those allegations, when viewed in the light of the governing law. For the reasons that follow, I hold that Dilacio has failed to satisfy that standard.

Dilacio claims that the criticisms of his performance as a Business Representative by Forde,

his termination from that position, and the disciplinary charges Leary filed against him were sham, pretextual, and in furtherance of Forde's scheme to retain his Union power, and that such conduct violated Title I, § 101 of the LMRDA. But a question arises with respect to the applicability of § 101. Dilacio does not quarrel with the District Council's description of him as an at-will employee of the Council. One of the reforms generated by the government's civil RICO action was a restructuring of the constituent local unions' governance. Business Representatives used to be elected by the locals and served the local that elected them. All Business Managers are now hired by the District Council, become employees of the District Council, and are assigned by the District Council to a particular local. The District Council assigned Dilacio to Local 157.

The distinction is important because in *Finnegan v. Leu*, 456 U.S. 431 (1982), the Supreme Court held that an elected union president's termination of the employment of business agents who had opposed him in the election did not violate § 101. The Court observed that the terminated agents "had a dual status as both employees and members of the Union," and framed the issue as whether under § 101 "they were thereby immunized from discharge at the pleasure of the president from their positions as appointed union *employees*." *Id.* at 437 (emphasis in original). The Court answered that question in the negative, reasoning that Title I of the LMRDA "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Id.* at 441.

*Finnegan* is not dispositive of the case at bar because in *Franza*, 869 F.2d 41, the Second Circuit held that a dismissed union employee states a cognizable claim under Title I of the LMRDA "when he demonstrates upon clear and convincing evidence that dismissal was part of a scheme to suppress dissent." *Id.* at 45. That is in essence what Dilacio must prove against Forde and the District Council to sustain a § 101 claim against them; and, to obtain preliminary injunctive relief,

10

Dilacio must demonstrate a clear or substantial likelihood that he will succeed in doing so at a trial.

Dilacio's prospects must, on the present record, be reckoned as slim. His theory of the case is that Forde conceived his self-interested scheme to purge incumbent Business Representatives in November 2007. But it is at least if not more plausible to regard the actions taken against the Local 157 Business Manager and Business Representatives (including Dilacio), followed by the UBC's imposition of supervision upon the local, as a continuation of the Union's efforts to confront the problems involving business representatives which were first uncovered by II Mack in 2003, prompted the District Council's admonishments to business managers and representatives in 2005, and led to Unitel's investigations in 2007. A further stimulus for the Union's corrective actions may be found in Leary's account of the hotline complaint received in September 2007. These are historical facts. Dilacio's assertions of improper motives on the part of both Forde and Callahan are subjective, conclusory, and presently unsupported by facts from which the requisite invidious inferences could be drawn, let alone compelled (as the enhanced standard of proof would require for a TRO changing the status quo). Dilacio's complaint in this action may be construed – as the District Council and Forde construe it – as an effort to avoid the consequences of his own misconduct.

It is also worth noting that if Dilacio's conspiracy theory is well founded, UBC General President McCarron and District Vice-President Frank Spencer was either co-conspirators or dupes. On the basis of the inquiries by the District Council and Callahan, in November 2007 McCarron imposed supervision upon Local 157 and appointed Spencer as the supervisor. In a special issue of the local's newsletter to the membership, Spencer reported:

> Early in 2007, while investigating another contractor for defrauding

11

> the members, the I.I. found telephone, timesheet, and other records showing that the Business Manager and two Business Representatives in Local 157 *had not completed their activity sheets as required; had not conducted regular jobsite visits during that time; and were not even at work in their jurisdiction when they reported themselves as working a regular day* (absences that far exceeded allowed leave).[13]

The three individials referred to were Hanley, Kennedy, and Dilacio.

While Dilacio argues that because of Forde's overpowering influence his trial before the District Council Trial Committee on October 9 will be a sham and the verdict preordained, again his argument is based upon conclusory assertions and I cannot accept them as a basis for granting the preliminary injunctive relief of barring the trial. The UBC constitution pursuant to which the trial will be held contains facially adequate guarantees of procedural fairness. I recognize that Dilacio offers seemingly plausible defenses of his conduct as Business Manager and challenges the fairness of Unitel's investigation. But those contentions will be available to him at the Union trial.

I conclude that on the present record, Dilacio has failed to demonstrate the requisite enhanced likelihood of success on the merits that would justify a temporary restraining order in the form prayed for.

Nor am I satisfied that the balance of hardships tips decidedly toward Dilacio. Dilacio stresses that the Union elections will take place in mid-December, but his appeal to urgency would have more force if the record were not entirely empty of any evidence that Dilacio had actually been planning and preparing to run for office. The substance of his position is that everyone had to know he might run. As for the Union, it has a legitimate interest in conducting a prompt internal trial of serious charges against a member. That interest would be prejudiced if the October 9 trial, less than

---

[13] Ex. C to Callahan Decl. (emphasis in original).

12

two weeks off, were delayed indefinitely. Moreover, if Dilacio presents persuasive evidence on his behalf and the Trial Committee dismisses the charges against him, many of the issues presented by this case may be mooted.

Accordingly, Dilacio's motion for a temporary restraining order against the District Council and Forde is denied.

## C.  Expedited Discovery

While the District Council and Forde ask that Dilacio's motion for a preliminary injunction also be denied at this time, this Opinion and Order does no more than deny Dilacio's motion for a TRO. Dilacio is entitled to attempt to develop an evidentiary record that would justify a preliminary injunction in the form prayed for, although I have noted the enhanced demonstration of likelihood of success that he must make.

I hold in principle that Dilacio is entitled to expedited discovery. The District Council and Forde are equally entitled to expedited discovery. Discovery will be supervised by a Magistrate Judge under a separate Order of Reference. The Magistrate Judge will determine the discovery schedule, subject only to the condition that it not interfere with the parties' participation in the District Council trial, which takes precedence.

As for Callahan, while for the reasons stated he is not subject to a restraining order, he may be deposed in discovery as a fact witness. If Unitel should be concerned that questions put by counsel for Dilacio might prejudice any investigations by the II in progress, those concerns may be communicated to the Magistrate Judge.

While I cannot mandate it, I express to the District Council the Court's earnest desire that its Trial Committee complete the proceeding before it as promptly as possible, consistent with the

13

UBC constitution and principles of fairness and due process.

## IV. CONCLUSION

Plaintiff Dilacio's motion for a temporary restraining order is denied as to all Defendants. Expedited discovery consistent with this Opinion will be supervised by a Magistrate Judge. The return date of Plaintiff's motion for a preliminary injunction, and a determination of whether a further evidentiary hearing is required, will be the subjects of a subsequent Order of the Court.

It is SO ORDERED.

Dated: New York, New York
September 29, 2008

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE